MARGARET V. GRAY vs. ELMER E. RICHARDS, Ex'r.

Franklin.    Opinion April 7, 1921.

*In reaching a reasonable construction of a letter as written evidence on the question or controversy at issue, it should be viewed in the light of all the circumstances and probabilities of the case.*

Action of assumpsit against the executor of the estate of Henry Clay Wood to recover for services rendered as a nurse and for cash disbursements made. Items in the account annexed aggregating $597.14 are admitted. The contest is over the following item. "One year's additional compensation from the date of General Wood's death at $25 per week as per special contract, $1300." The special contract referred to is acknowledged in a letter written by General Wood to Mr. Richards, his attorney, and subsequently his executor, under date of August 31, 1915, which is as follows: "Before Miss Margaret V. Gray left New York City for Farmington to take care of me I made an agreement with her whereby in the event of Miss Gray leaving my service at any time or at my death she is to receive one year's salary and traveling expenses to New York." The controversy arises over the rate per week at which this one year's salary is to be computed. The defendant claims it should be at $7 per week, the rate at which she commenced service in 1911, while the plaintiff claims it should be at $25 per week, the wage at the time the service ceased at his death, August 28, 1918.

*Held:*

That a reasonable construction of this letter, viewed in the light of all the circumstances and probabilities of the case, leads to the conclusion that the rate should be fixed as of the time when the service ceased, $25 per week.

On report.   This is an action of assumpsit against the executor of the estate of Henry Clay Wood to recover for services as a nurse and for cash disbursements made.   The plaintiff entered into the employment of the defendant's testator as his nurse in 1911, and continued to serve him in that capacity until his decease.   Before plaintiff left New York to go to Farmington, Maine, defendant's testator agreed that she should receive whenever she left his service, or at his decease one year's salary and traveling expenses to New York.   The controversy in this case is over the meaning of the words "one year's

salary." By agreement of the parties the case was reported to the Law Court upon an agreed statement of facts for final determination. Judgment for plaintiff.

Case is stated in the opinion.

*Thomas L. Talbot,* for plaintiff.

*George C. Wheeler, and Frank W. Butler,* for defendant.

SITTING: CORNISH, C. J., SPEAR, PHILBROOK, DUNN, WILSON, DEASY, JJ.

CORNISH, C. J. On report. Action of assumpsit against the executor of the estate of Henry Clay Wood to recover for services rendered as a nurse and for cash disbursements made. The account annexed contains five items.

The first, a charge for services from April 25, 1918, to September 7, 1918, at $25 per week, amounting to $482.14 is admitted.

The second, a charge for laundry work, and the third, for cash paid for drugs, the two aggregating $115, are also admitted.

The fourth, a charge for extra nursing $150 is not pressed. The sole contention is over the fifth item, viz: "One year's additional compensation from the date of General Wood's death at $25 per week as per special contract, $1300." The special contract referred to is acknowledged in a letter written by General Wood to Mr. Richards, his attorney, and subsequently his executor, under date of August 31, 1915, which is as follows:

"Before Miss Margaret V. Gray left New York City for Farmington, to take care of me, I made an agreement with her, whereby in the event of Miss Gray leaving my service at any time, or at my death, she is to receive one year's salary and traveling expenses to New York." The controversy arises over the rate per week at which this one year's salary is to be computed. Shall it be at $7 per week, the wage at which plaintiff began her service, as claimed by the defendant, or at $25 per week, the wage at the time the service ceased, as claimed by the plaintiff?

From the agreed statement of facts it appears that the plaintiff, then a resident of New York, entered the employment of General Wood in the year 1911, and her first service was performed at Farmington, in this State, where he then resided. The price then was $7 per week. As his health became more infirm and his bodily ailments

increased her compensation was correspondingly increased. In August, 1915, it was fixed at $18 per week. Later when the testator moved to Portland and took rooms at the Congress Square Hotel, the agreed price was raised to $25 per week and continued at that figure until his death on August 28, 1918. The letter of August 31, 1915, was written by the plaintiff at the dictation of General Wood, was signed by him and subsequently during his residence in Farmington was exhibited to Mr. Richards, with the evident purpose of informing Mr. Richards, whom the testator had selected as his executor, of the contract relations between the parties. It must be borne in mind that this letter did not create the contract, but was simply a written recognition or acknowledgment of that contract which was itself oral and had been made four years before. The validity of the contract is not challenged. The only question is its terms and that must be determined from the language of the letter viewed in the light of the circumstances and probabilities of the case.

The testator at the time the contract was made wished to have Miss Gray leave New York and come to Farmington to care for him during his declining years, and if possible stay with him to the end. In order to accomplish this he held out, before she left New York, this inducement of an extra year's salary and traveling expenses back to New York in the event of her leaving him at any time or at his death. The defendant contends that this meant one year's salary at $7 per week, the amount she received at the time of entering his service. We cannot so construe it. If the defendant's contention is correct then the bonus she was to receive was a fixed and definite sum, fifty-two weeks at $7 per week, or $364, it mattered not when she might leave or how long she might remain. Under this construction there would be no inducement for the plaintiff to remain in service, so far as this bonus was concerned. She would receive the same amount if she left at the end of seven months, or even seven weeks, as if she remained seven years. It was to be a fixed sum, $364, in any event, and nothing more. This would thwart the very purpose the testator had in mind.

Moreover if the amount of the bonus was fixed then that fact must have been known to both parties, and when General Wood wrote the letter of August 31, 1915, he would naturally have inserted that agreed sum. Instead of stating "She is to receive $364," he said, "She is to receive one year's salary," a varying and indefinite amount.

In our opinion the plaintiff's construction is the more reasonable, and more in harmony with the testator's purpose that the year's wages promised as an inducement should be reckoned as of the time when service should cease, whether by voluntary departure or by the testator's death. The words are: "In the event of Miss Gray leaving my service at any time or at my death she is to receive one year's salary, and traveling expenses to New York." The fair interpretation would seem to be that when that event happens, then the salary shall be computed. It is true that the language may be regarded as ambiguous, but the words are those of the testator and if ambiguous they are to be construed more strongly against him.

This view furthers the testator's desire to retain the plaintiff in his service during the remainder of his life. The longer the service, naturally the greater the wages and therefore the greater the bonus, if that was to increase as the salary increased. In this way the testator was guarding against her leaving him in his last days by increasing the inducement for her to remain. His purpose was fulfilled and she remained with him to the end.

Admittedly the traveling expenses back to New York are to be reckoned not as of 1911 but as of 1918. In like manner we think the salary is to be computed as of the time when the event happened which rendered computation necessary, namely the death of the testator. The fifth item should be allowed as charged.

*Judgment for plaintiff for $1,897.14*
*with interest from February 16,*
*1920, the date of filing claim in*
*Registry of Probate.*